1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    PHOENIX TRADING, INC., et al.,          CASE NO. C10-0920JLR

11              Plaintiffs,                    ORDER

12         v.

13    STEVEN L. KAYSER, et al.,

14              Defendants.

## I.    INTRODUCTION

16        Before the court are Plaintiffs Phoenix Trading, Inc., dba Amercare Products, Inc.

17    ("Amercare"), and Wendy Hemming's (collectively "Amercare Plaintiffs") motion for

18    partial summary judgment (Dkt. # 29); Defendants Steven L. Kayser, Loops LLC

19    ("Loops"), and Loops Flexbrush LLC's (collectively "Loops Defendants") special motion

20    to strike under Washington's Anti-SLAPP ("strategic lawsuits against public

21    participation") statute, RCW ch. 4.24 (Dkt. # 32); and Loops Defendants cross-motion for

22    partial summary judgment (Dkt. # 48).  Having considered the submissions of the parties,

the record, and the governing law, and having heard the oral argument of counsel on July 21, 2011, the court GRANTS  Loops Defendants' special motion to strike the Amercare Plaintiffs' defamation claims (Dkt. # 32), and DENIES the Amercare Plaintiffs' motion for partial summary judgment (Dkt. # 29) and Loops Defendants' cross-motion for partial summary judgment (Dkt. # 48) as MOOT.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

### A.  Background Related to the Patent Litigation

The parties have more than one lawsuit presently pending in the Western District of Washington.  On July 11, 2008, Loops Defendants sued the Amercare Plaintiffs and others for patent infringement, violations of the Lanham Act, unfair competition under Washington common law, violations of the Washington Consumer Protection Act, and fraud.  *See Loops LLC, et al. v. Phoenix Trading, Inc., et al.,* No. C08-1064RSM (W.D. Wash.) ("the Patent Litigation").[1]  In short,  Loops Defendants alleged in the Patent Litigation that the Amercare Plaintiffs fraudulently obtained a sample of the Loops Flexbrush, sent the sample to China to be copied, and sold the infringing copies at a low

_____

[1] In the Patent Litigation, the plaintiffs were Loops LLC and Loops Flexbrush LLC. *Loops LLC v. Phoenix Trading, Inc.,* No. C08-1064RSM, 2011 WL 915785, at *1 (W.D. Wash. Mar. 15, 2011).  Mr. Kayser was not a party to the Patent Litigation.  The defendants in the Patent Litigation were Amercare, Wendy and Jeffery Hemming, and H & L Industrial.  Mr. Hemming (who is Ms. Hemming's husband and a minority shareholder and employee of Amercare), as well as H & L Industrial (which is Amercare's manufacturer representative in China) are not parties to this lawsuit.  The court recognizes this slight disparity with regard to the parties in each of these related lawsuits, and also recognizes that the litigation position of the parties is reversed in this lawsuit.  Nevertheless, for ease of discussion, the court consistently refers to "Loops Defendants" throughout even though they were plaintiffs in the Patent Litigation.  The court also refers to "Amercare Plaintiffs" throughout even though they were defendants in the Patent Litigation.

price, outbidding Loops on a supply contract.  The facts of the Patent Litigation overlap

with the present suit, and so the court provides the factual background arising from the

Patent Litigation.

Defendant Loops LLC and its president, Defendant Steven L. Kayser, design and

market oral hygiene products principally used by jail inmates.  *See Loops LLC v. Phoenix*

*Trading, Inc.,* No. C08-1064RSM, 2010 WL 3041866, at *1 (W.D. Wash. July 30, 2010).

In August 2004, Loops Defendants submitted a patent application to the United States

Patent and Trademark Office ("PTO") for a flexible handle toothbrush, known as the

"Loops Flexbrush."  *Id.* at *3.  In early 2006, Loops Defendants won a New York City

Department of Corrections ("DOC") competitive bid for the Flexbrush.  DOC purchased

Flexbrushes from Loops between August 2006 and June 2007.  *See id.* at *1.  Loops's

patent for the Flexbrush, number 7,334,286 B2 ("'286 patent"), did not issue until

February 26, 2008.  *Id.* at *3.

In January 2006, Amercare President Wendy Hemming contacted Mr. Kayser

asking for Loops's dental floss price quotes and samples of all of Loops's products.  *Id.*

Mr. Kayser sent samples of Loops's products to Ms. Hemming, including the Loops

Flexbrush.  *Id.*  The Flexbrush samples were wrapped in packaging stating "patent

pending."  *Id.* at *3.  Mr. Kayser agreed to let Ms. Hemming distribute his dental floss,

*see id.* at *1, but repeatedly refused to allow Ms. Hemming to distribute his Flexbrush.

*Id.* at *1-2.  Eventually, Ms. Hemming sent Flexbrush samples to China for copying.  *Id.*

at *2.  Ms. Hemming called the soft handle toothbrush that she manufactured in China

"the Amercare Soft Handle."  *Id.*  The Amercare Soft Handle is an identical copy of the

1  Flexbrush in every respect, except one: where the words "LoopS™ Flexbrush™" are

2  embossed in raised lettering on the back side of the head of the Loops Flexbrush

3  (opposite the bristles), the name "Amercare" is embossed on the Amercare toothbrush in

4  the same place and in the same font. *Id.* Using the Amercare Soft Handle, as well as her

5  knowledge of Loops's pricing, Ms. Hemming and Amercare successfully replaced Mr.

6  Kayser and Loops as the DOC toothbrush supplier. *Id.*

7     As noted above, on July 11, 2008, Loops Defendants filed suit against Amercare

8  Plaintiffs. In his July 30, 2010 ruling on Amercare's motion for partial summary

9  judgment, United States District Court Judge Ricardo S. Martinez ruled that Loops

10  Defendants were not entitled to infringement damages or a reasonable royalty with regard

11  to their patent infringement claim. *Id.* at *5-6. Judge Martinez also dismissed Loops's

12  Lanham Act claim, *id.* at *6, its unfair competition under common law claim, *id.* at *7, its

13  fraud claim, *id.* at *7-9, and its Consumer Protection Act claim, *id.* at *9-11.

14     On March 15, 2011, however, Judge Martinez reversed course based on newly

15  discovered evidence presented by Loops Defendants indicating that Amercare Plaintiffs

16  had suppressed material evidence in the Patent Litigation, had filed false declarations,

17  and had been granted summary judgment based on those false declarations and

18  improperly suppressed evidence. *See Loops LLC v. Phoenix Trading, Inc.,* No. C08-

19  1064RSM, 2011 WL 915785 (W.D. Wash. Mar. 15, 2011). Specifically, Judge Martinez

20  found that Ms. Hemming "lied while under oath," and that Amercare Plaintiffs violated

21  the court's discovery order and "may have submitted many numerous false declarations

22  in the lawsuit." *Id.* at *9. Further, Judge Martinez had already found that Amercare

Plaintiffs had "lost, destroyed, or withheld material documents, including invoices, purchase orders and emails between Amercare and its Chinese or Taiwanese contracts that were relevant to liability and damages." *Id.* Judge Martinez stated that he was "tremendously concerned with what appears to be a prolonged pattern of misrepresentation and deceit before this Court." *Id.* Judge Martinez concluded:

> [T]he new evidence, combined with the pattern of deception and misrepresentation on the part of [Amercare Plaintiffs] throughout this litigation, indicates that the Court cannot be certain that any order it enters in this case will be supported by the benefit of a full, unadulterated record. Neither [Loops Defendants], nor the Court, will ever "have any comfort that it knows the truth, and that it can properly prepare this case for trial . . . . The integrity of this Court and our judicial system . . . has been undermined . . . [by Amercare Plaintiffs'] conduct in this case." *Monsanto Co. v. Ralph,* 382 F.3d 1374, 1379 (Fed. Cir. 2004).

*Id.* at \*10. Accordingly, Judge Martinez granted Loops Defendants' Federal Rule of Civil Procedure 37 motion, struck Amercare Plaintiffs' pleadings in the Patent Litigation, including their answer, and entered default judgment against Amercare Plaintiffs in the Patent Litigation. *Id.*

## B. Background Related to the Present Lawsuit

On February 18, 2010, in the midst of the Patent Litigation, Amercare Plaintiffs filed the present defamation suit in Whatcom County Superior Court for the State of Washington against Loops Defendants alleging claims for defamation per se and defamation. (*See* Notice (Dkt. # 1).) In May 2010, Amercare Plaintiffs amended the complaint to add a claim for false or fraudulent registration of trademarks under 15 U.S.C. § 1120. Loops Defendants removed the lawsuit to the Western District of Washington on June 4, 2010. (*Id.*)

The statements at issue were all made in the context of the dispute between the parties in the Patent Litigation described above.  First, Amercare Plaintiffs complain about various statements that Mr. Kayser or his counsel made in three letters:  (1) an August 20, 2007, letter to Mayor Michael Bloomberg of New York City, and other senior officials within various departments of New York City (Klingbeil Decl. (Dkt. # 31) Ex. E at 1-5); (2) an August 22, 2007 letter from Loops Defendants' counsel to Mario J. Crescenzo, Jr., Agency Chief Contracting Officer and Assistant Commissioner of New York City, and copied to Laurie Kaye, Deputy General Counsel New York City Comptroller, Office of Contract Administration; and (3) a September 12, 2007 letter from Loops Defendants' counsel to Ms. Kaye.  (*See* SJ Mot. at 3-4; Resp. to Special Mot. (Dkt. # 42) at 7-8.)  In these letters, Mr. Kayser or his counsel assert that Amercare Plaintiffs removed the registered trademark from Flexbrush toothbrushes, repackaged the toothbrushes as Amercare toothbrushes, and submitted the altered toothbrushes to the DOC as a part of the competitive bid process.  (Klingbeil Decl. Ex. E at 1-5.)  Subsequently, in a July 10, 2008 declaration that he filed in the Patent Litigation, Mr. Kayser admitted that he had erred when he previously stated that Amercare had removed trademarks from Loops Flexbrush toothbrushes.  (*Id.,* Ex. F ¶ 119.)  Rather, he stated that the sample toothbrushes that Amercare Plaintiffs had submitted to the DOC were "counterfeit Amercare toothbrushes which infringed upon [Loops's] patents and trademarks."  (*Id.*)

Second, Amercare Plaintiffs claim that on February 18, 2008, Mr. Kayser again wrote to Mayor Bloomberg, Stu Loesser, the Mayor's press secretary, Daniel Castleman,

Chief of the Investigative Division at the Manhattan District Attorney's office, and other City officials, along with Alan Feuer, Dianne Cardwell and Walt Bogdanich, reporters for the New York Times. (*Id.* Ex. E at 18-23.) In this letter, Mr. Kayser states that Amercare toothbrushes are laden with excessive amounts of lead and heavy metals. (*Id.*) In addition, Mr. Kayser states in his July 10, 2008 Patent Litigation declaration that he believes that Amercare's infringing products contain excessive amounts of lead and other heavy metals harmful to consumers, that Amercare's toothbrushes had not been approved by the Food and Drug Administration ("FDA"), and that without such approval the toothbrushes posed a danger to the public. (*Id.* Ex. F ¶¶ 211, 227, 229, 238, 313.) Loops Defendants distributed Mr. Kayser's July 10, 2008 Patent Litigation declaration to third parties not involved in the Patent Litigation, including an Assistant U.S. Attorney, the U.S. Customs Agency in Seattle, and the New York Times. (*Id.* Ex. E at 44 & Ex. J at 158-62.) In addition, Loops Defendants made similar statements in the August 20, 2007, August 22, 2007, and February 18, 2008 letters referenced above. (*Id.* Ex. E at 4, 7, 22.)

Third, Amercare Plaintiffs assert that Loops Defendants repeatedly stated that the Amercare toothbrush infringed the Loops Defendants' patent prior to February 26, 2008 even though the Flexbrush patent did not issue until that date. (SJ Mot. at 8-9; Resp. to Special Mot. at 11-12.) Amercare Plaintiffs point to statements in Mr. Kayser's February 18, 2008 letter asserting that Amercare was engaged in "[c]ounterfeiting of our patented products." (Klingbeil Decl. Ex. E at 22.) In addition, in an April 21, 2008 letter to various New York City officials, Mr. Kayser implied that "Amercare would be providing counterfeit toothbrushes that infringed on [Loops'] trademark and patents" to the DOC

on September 27, 2007.  (*Id.* at 26.)  Similarly, in his July 10, 2008, Patent Litigation declaration (which was distributed to third parties as noted above), Mr. Kayser claimed that Amercare "intentionally and willfully infringed on . . . Loops Flexbrush patents" on April 24, 2007, July 10, 2007, and September 27, 2007, which are all dates prior to the February 26, 2008 issuance of the '286 patent.  (*Id.* Ex. F ¶¶ 91-92.)

Finally, Amercare Plaintiffs allege that Loops Defendants falsely stated that Amercare Plaintiffs were "counterfeiting" Loops' trademarks.  (SJ Mot. at 9-12; Resp. to Special Mot. at 12-14.)  Loops Defendants made these statements in various letters to New York City officials, the International Anti-Counterfeiting Coalition ("IAC") in Washington, D.C., and reporters at the New York Times, Harper's Bazaar Magazine, and the New York Sun.  (*Id.* Ex. E at 3, 6, 8-9, 13, 16, 18-22, 25-28, 31-38, 40-41, 43-49.)  In addition, Mr. Kayser made similar statements in his July 10, 2008 Patent Litigation declaration, which was distributed beyond the Patent Litigation as described above.

The parties have exchanged no discovery in the present lawsuit.  (Reply to Special Mot. (Dkt. # 52) at 2.)  Amercare Plaintiffs seek partial summary judgment that the foregoing statements were "provably false," that Loops Defendants were not privileged to make any of the referenced statements, that the statements were made by Loops Defendants with malice, and that each of the statements constitutes defamation per se. (SJ Mot. at 1-2.)  On the same day, Loops Defendants brought a special motion to strike Amercare Plaintiffs' defamation claims under Washington's Anti-SLAPP statute, RCW ch. 4.24.  (Special Mot. (Dkt. # 32).)  Loops Defendants have also cross-moved for

partial summary judgment dismissing Amercare Plaintiffs' defamation claims. (*See* SJ Resp. (Dkt. # 48).)

### III. ANALYSIS

Prior to recent amendments, the Washington Anti-SLAPP law simply provided, in pertinent part, that "[a] person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency . . . regarding any matter reasonably of concern to that agency. . . ." RCW 4.24.510. The purpose of the statute was to encourage the reporting of potential wrongdoing to government entities by protecting parties from the threat of retaliatory lawsuits. *See Aronson v. Dog Eat Dog Films, Inc.,* 738 F. Supp. 2d 1104, 1109 (W.D. Wash. 2010). If a defendant's statements are found to fall within this portion of Washington's Anti-SLAPP statute, then the defendant is immune from civil liability. *See Akmal v. Cingular Wireless,* No. C06-748JLR, 2007 WL 1725557, at *5 (W.D. Wash. June 8, 2007), *aff'd*, 300 F. App'x 463 (9th Cir. 2008).

The 2010 amendments to Washington's Anti-SLAPP statute expanded the type of conduct protected by the Act, and created a procedural device to quickly halt any litigation found to be targeted at persons lawfully communicating on matters of public or governmental concern. *See Castello v. City of Seattle,* No. C10-1456MJP, 2010 WL 4857022, at *3 (W.D. Wash. Nov. 22, 2010). The newly enacted provisions provide that a party may bring a special motion to strike any claim that is based on an action involving public participation and petition. RCW 4.24.525(4)(a). An action involving public

1  participation and petition is defined as "[a]ny oral statement made, or written statement or

2  other document submitted" (1) "in a legislative, executive, or judicial proceeding or other

3  governmental proceeding authorized by law," (2) "in connection with an issue under

4  consideration or review by a legislative, executive, or judicial proceeding or other

5  governmental proceeding authorized by law," (3) "that is reasonably likely to encourage

6  or to enlist public participation in an effort to effect consideration or review of an issue in

7  a legislative, executive, or judicial proceeding or other governmental proceeding

8  authorized by law," or (4) "in a place open to the public or a public forum in connection

9  with an issue of public concern." RCW 4.24.525(2)(a)-(d). In addition, the statute

10  contains a catch-all provision that includes "any other lawful conduct in furtherance of

11  the exercise of the constitutional right of free speech in connection with an issue of public

12  concern, or in furtherance of the exercise of the constitutional right of petition." RCW

13  4.24.525(2)(e). There is nothing in the language of RCW 4.24.525 to indicate that it

14  supersedes RCW 4.24.510. The two provisions are complimentary. *Castello*, 2010 WL

15  4857022, at *4 n.2.

16       A party bringing a special motion to strike a claim has the initial burden of

17  showing by a preponderance of the evidence that the claim is based on an action

18  involving public participation and petition. RCW 4.24.525(4)(b). If the moving party

19  meets this burden, the burden shifts to the responding party to establish by clear and

20  convincing evidence a probability of prevailing on the claim. *Id.* If the responding party

21  meets this burden, then the court shall deny the special motion. *Id.* In making this

22

determination, the court considers pleadings and supporting and opposing affidavits stating the facts upon which liability is based. RCW 4.24.525(4)(c).

In addition, a moving party who prevails on a special motion to strike under the Anti-SLAPP statute is entitled to an award of attorney's fees and costs incurred in connection with the motion and an additional amount of ten thousand dollars. RCW 4.25.525(6)(a)(i) & (ii). Additional sanctions may be awarded to deter repetitive conduct. RCW 4.24.525(6)(iii). Attorney's fees, costs, and other sanctions may be imposed against the moving party if the court finds that the special motion is frivolous or is brought solely to cause unnecessary delay. RCW 4.24.525(6)(b).

The Act is to be applied and construed liberally to effectuate its general purpose of protecting participants in public controversies from abusive use of the courts. *Aronson,* 738 F. Supp. 2d at 1110. Washington's Anti-SLAPP Act is closely modeled on the California Anti-SLAPP Act, and courts have applied California law as persuasive authority in interpreting Washington's Act. *See, e.g., Castello,* 2010 WL 4857022, at *4; *Aronson,* 738 F. Supp. 2d at 110. The court considers Loops Defendants' Anti-SLAPP motion first because if granted, it will moot both summary judgment motions.

### A.   Application of Washington's Anti-SLAPP Provisions

In their responsive brief, Amercare Plaintiffs ignore the first issue the court must determine in assessing a special motion to strike (whether the claim is based on an action involving public participation and petition), and instead jump directly to the second issue (whether the plaintiff can establish by clear and convincing evidence a probability of prevailing on the claim). (*See* Resp. to Special Mot. at 1-2.) The only opposition to the

applicability of the Anti-SLAPP statute offered by Amercare Plaintiffs is an assertion that the special motion is untimely. (*Id.* at 1.) The court, nevertheless, considers not only the timeliness of Loops Defendants' special motion, but also the applicability of the Anti-SLAPP statute to Amercare's defamation claims.

### 1. Timeliness of the Special Motion

The 2010 amendments to Washington's Anti-SLAPP statute provide that a "special motion to strike may be filed within sixty days of the service of the most recent complaint or, in the court's discretion, at any later time upon terms it deems proper." RCW 4.24.525(5)(a). The operative complaint was filed on May 21, 2010 (Dkt. # 1), but Loops Defendants did not file their special motion to strike the defamation claims until February 25, 2011 (Dkt. # 32).

Although Loops Defendants filed their special motion to strike more than sixty days following service of the applicable complaint, the court finds that the motion is nevertheless timely. As noted above, the parties have exchanged no discovery in this action. Although Amercare Plaintiffs have filed a motion for summary judgment, it was filed on the same day as Loops Defendants' special motion to strike. (*Compare* Dkt. # 29 *with* Dkt. # 32.) Much of the briefing and evidentiary materials filed by the parties with respect to the special motion to strike and the cross-motions for summary judgment are overlapping and applicable to both motions. In addition, Amercare Plaintiffs have not asserted that they have suffered any prejudice as result of the filing of the special motion outside of the sixty-day time period. (Resp. to Special Mot. at 1.)

The statutory language describing the applicability of the 60-day period is permissive. The statute grants the court discretion to allow filing outside of the sixty-day period. *See* RCW 4.24.525(5)(a). Under the circumstances presented here, where the parties have engaged in no discovery, and Amercare Plaintiffs assert no prejudice, the court deems the filing of the special motion beyond the statutory sixty day period following service of the complaint to be timely without the imposition of any terms.

## 2. Applicability of RCW 4.24.510

The court finds that Loops Defendants are immune from suit under RCW 4.24.510 for their statements to Mayor Bloomberg, other New York City officials, the United States Customs Agency, and an Assistant United States Attorney that (1) Amercare Plaintiffs removed the registered trademark from Flexbrush toothbrushes, repackaged Flexbrush toothbrushes as Amercare toothbrushes, and submitted the altered toothbrushes to the DOC as a part of the public contract competitive bidding process, (2) Amercare toothbrushes, manufactured in China, contain excessive amounts of lead or other heavy metals, and (3) Amercare toothbrushes infringed on Loops Defendants' patents or were counterfeit and violated Loops Defendants' trademarks. The transmittal of this type of information or these complaints to these government agencies is a communication regarding matters reasonably of concern to these government agencies. New York City was contracting with Amercare to provide toothbrushes to its inmate populations. If these toothbrushes were in violation of patents or trademarks, or were contaminated with excessive levels of harmful materials, then this is information that would be of concern to New York City. Likewise, because these items were being imported from China, this

1  information would also be reasonably of concern to the United States Customs Agency,

2  and the United States Attorney's office.  The immunity provided under RCW 4.24.510

3  attaches even if the information or complaint communicated to the government agency

4  was not done in good faith.  *See Bailey v. State,* 191 P.3d 1285, 1291 (Wash. Ct. App.

5  2008); *DiBiasi v. Starbucks Corp.,* 414 F. App'x 948, 949 (9th Cir. 2011) (unpublished)

6  (". . . Washington case law makes clear that the state legislature removed the good faith

7  requirement for entitlement to immunity [under RCW 4.24.510] in 2002.").  Thus, under

8  RCW 4.24.510, Loops Defendants are immune from civil liability with regard to all of

9  the above described statements to government agencies or officials.

10              3.  **Applicability of RCW 4.24.525**

11         In addition to Loops Defendants' statements to government officials or agencies,

12 Amercare Plaintiffs also complain about statements (described above) that Loops

13 Defendants made to a variety of media outlets, as well as to the IAC in Washington, D.C.

14 RCW 4.24.510 only applies to statements made to government agencies or certain self-

15 regulatory organizations.  Accordingly, this statutory provision is inapplicable to

16 statements made by Loops Defendants to the press or the IAC.  The court, therefore, must

17 analyze whether the recent amendments to Washington's Anti-SLAPP statute, found in

18 RCW 4.24.525, apply to Amercare Plaintiffs' defamation claims.  Loops Defendants

19 assert that their statements to various media outlets and to the IAC fall within RCW

20 4.24.525(2)(d) and (e), and are therefore subject to a special motion to strike.

21         A defendant may bring a special motion to strike with regard to any claim "that is

22 based on an action involving public participation and petition."  RCW 4.24.525(2).

Subsection (d) defines such an action to include any statement made "in a place open to the public or a public forum in connection with an issue of public concern." RCW 4.24.525(2)(d). The court has no trouble concluding that the news outlets to which Loops Defendants made their statements constitute public forums under the statute. *See Castello,* 2010 WL 4857022, at *6 (finding that a major television network's local news broadcast constitutes a "public forum" under RCW 4.24.525(2)(d)) (citing *Nyard, inc. v. Uusi-Kerttula,* 72 Cal. Rptr. 3d 210, 217 (Cal. App. Ct. 2008); *Annette F. v. Sharon S.,* 15 Cal. Rptr. 3d 100, 110 (Cal. Ct. App. 2004) ("[A] news publication is a 'public forum' within the meaning of [California's] anti-SLAPP statute if it is a vehicle for discussion of public issues and it is distributed to a large and interested community.")). Further, the statements made by Loops Defendants relate to Amercare Plaintiffs' involvement in public competitive bid contracting and the legality and safety of Amercare's product. New York City purchased substantial qualities of Amercare's toothbrushes for use by DOC inmates using taxpayer dollars. As such, these statements were in connection with issues of public concern, fall within RCW 4.24.525(2)(d), and are subject to a special motion to strike.

Whether the new anti-SLAPP statute is applicable to Loops Defendants' statements to the IAC is a more difficult issue. Loops Defendants assert that the IAC constitutes a "public forum" under RCW 4.24.525(2)(d). (Special Mot. at 12.) The IAC is a non-profit public interest or trade group that addresses counterfeiting and piracy issues. *See, e.g. Eli Lilly and Co. v. American Cyanamid Co.,* 82 F.3d 1568, 1579 (Fed. Cir. 1996) (Rader, J., concurring) (citing testimony on behalf of IAC before *Intellectual*

1 *Property Rights:  Hearing on S. 1860 and S. 1869 Before the Subcomm. On International*

2 *Trade of the Senate Comm. on Finance,* 99th Cong., 2d Sess 175, 182 (1986)); *Fonovisa,*

3 *Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 260 (9th Cir. 1996) (IAC is amicus curiae in

4 copyright and trademark enforcement action); *Gates Rubber Co. v. Bando Chem. Indus.,*

5 *Ltd.,* 9 F.3d 823, 831 n.3 (10th Cir. 1993) (court was aided in its analysis of copyright

6 law by amicus curiae IAC).  Loops Defendants cite no authority in support of their

7 assertion that such a public interest or trade group constitutes a "public forum" under

8 RCW 4.24.525(2)(d), and the court finds none.

9     Nevertheless, it is not necessary for the court to decide whether Loops

10 Defendants' statements to the IAC fall within RCW 4.24.525(2)(d) because the

11 statements fall within the Act's catch-all provision of  RCW 4.24.525(2)(e).  Section

12 (2)(e) states that the protections of the statute apply to "[a]ny lawful conduct in

13 furtherance of the exercise of the constitutional right of free speech in connection with an

14 issue of public concern."  RCW 4.24.525.  As noted above, Washington's Act is to be

15 applied and construed liberally to effectuate its purposes.  *Aronson,* 738 F. Supp. 2d at

16 1110.  The court finds that the Loops Defendants' statements to the IAC concerning

17 alleged counterfeiting in public contracting, which has potential impacts on taxpayers,

18 DOC inmates, and public contracts suppliers, were made in connection with issues of

19 public concern.  As such, Loops Defendants' statements to the IAC fall within the

20 purview of RCW 4.24.525(2)(e), and are subject to a special motion to strike.

21

22

### B. Amercare Plaintiffs Cannot Establish by Clear and Convincing Evidence a Probability of Prevailing on their Defamation Claims

Because the court has concluded that Loops Defendants have met their burden of demonstrating the applicability of the Anti-SLAPP statute by a preponderance of the evidence, the burden shifts to Amercare Plaintiffs to establish by clear and convincing evidence a probability of prevailing on their defamation claims. *See* RCW 4.24.525(4)(b). Amercare Plaintiffs fail to meet this difficult burden because there are numerous applicable defenses available to Loops Defendants, and because, even more fundamentally, Amercare Plaintiffs fail to demonstrate they can prove all of the required elements of their defamation claims.

#### 1. Absolute Immunity

First, Amercare Plaintiffs cannot demonstrate by clear and convincing evidence a probability of prevailing on any defamation claim based on statements Loops Defendants made to government entities concerning Amercare and its product. As discussed above, Loops Defendants are entitled to absolute immunity from civil liability with regard to these statements under RCW 4.24.510.

#### 2. Statute of Limitations

Second, Amercare Plaintiffs cannot demonstrate by clear and convincing evidence a probability of prevailing on their defamation claims with regard to statements Loops Defendants made accusing Amercare of removing the trademark from the Loops Flexbrush and counterfeiting because these claims suffer from a serious statute of limitations infirmity. The statute of limitations with regard to defamation claims in

Washington is two years.  *See* RCW 4.16.100; *Albright v. State,* 829 P.2d 1114, 1118 n.3 (Wash. Ct. App. 1992).

On August 20, 2007, Mr. Kayser wrote to Mayor Bloomberg and various other New York City officials and accused Amercare of removing Loops' registered trademark from Flexbrush toothbrushes and submitting the altered toothbrushes to the DOC under Amercare's label.  (*See* Klingbeil Decl. (Dkt. # 31) Ex. E at 3.)  On October 4, 2007, Mr. Mario Crescenso, Jr., a New York City official, forwarded this and other letters the City had received from representatives of Loops Defendants protesting the award of the toothbrush contract to Amercare onto Ms. Hemming asking for a written response.  (*See* Jenkins Decl. (Dkt. ## 33-35) Ex. 6.)  Ms. Hemming sent a letter no later than October, 2007, to Mr. Crescenso in which she responded to the allegations in Mr. Kayser's August 20, 2007 letter.  (*See id.* Exs. 7-8.)  In her letter, Ms. Hemming states that "[i]t would be impossible to file off or remove the Loops Flexbrush logo off of Mr. Kayser's toothbrushes," and that Amercare "did not do this in any way."  (*Id.* Ex. 7 at 1.)

Loops Defendants assert, on the basis of the foregoing correspondence, that Amercare Plaintiffs were on notice of Loops Defendants' accusations concerning the removal of Flexbrush trademarks no later than October 2007.  Because Amercare Plaintiffs did not file their complaint in state court until February 18, 2010, Loops Defendants argue that the two-year statute of limitations had run with regard to these statements.  Amercare Plaintiffs respond that the correspondence described above does not show evidence of malice on the part of Mr. Kayser, or his knowledge of the falsity of his statements, and that Amercare Plaintiffs therefore did not know all of the facts

necessary to give rise to their present claims until they had received both Mr Kayser's

July 10, 2008 Patent Litigation declaration (which was filed on July 17, 2008), as well as

the first set of discovery documents in the Patent Litigation on January 28, 2010.  (Resp.

to Special Mot. at 3, 14-15 & n.4.)

In Washington, the discovery rule operates to prevent the commencement of the

running of the statutory period until the time the claimant knew, or should have known,

of the facts giving rise to his or her claim.  *See, e.g., Reichelt v. Johns-Manville Corp.,*

733 P.2d 530, 534-35 (Wash. 1987).  The discovery rule, however, does not require

knowledge of the existence of a legal cause of action.  *Id.*  "[W]hen a plaintiff is placed

on notice by some appreciable harm occasioned by another's wrongful conduct, the

plaintiff must make further inquiry to ascertain the scope of the actual harm."  *Clare v.*

*Saberhagen Holdings, Inc.,* 123 P.3d 465, 467 (Wash. Ct. App. 2005).  "[O]ne who has

notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts

which reasonable inquiry would disclose."  *Id.* (quoting *Hawkes v. Hoffman,* 105 P. 156,

158 (1909)); *see also Green v. A.P.C.,* 960 P.2d 912, 916 (Wash. 1998).  Generally,

whether a plaintiff is on notice of facts sufficient to put him or her upon inquiry and

begin the running of the statutory period is a question of fact for the jury.  *See Hipple v.*

*McFadden,* No. 398028II, ___ P.3d ___, 2011 WL 1653194, at *4 (Wash. Ct. App. Apr.

28, 2011).  However, the plaintiff bears the burden of proof that facts constituting the

claim were not and could not have been discovered by due diligence within the applicable

limitations period.  *Clare,* 123 P.3d at 467.  Further, where reasonable minds can reach

but one conclusion, application of the discovery rule may be determined as a matter of law. *Hipple,* 2011 WL 1653194, at *4.

Here, Amercare Plaintiffs received notice at least by October 2007 from New York City officials that Loops Defendants had accused Amercare Plaintiffs of removing the trademark from or otherwise counterfeiting Flexbrush toothbrushes. Amercare Plaintiffs responded in an October 2007 letter declaring the falsity of these allegations. At this point, Amercare Plaintiffs knew that Loops Defendants were asserting arguably false allegations to New York City officials and challenging the propriety of DOC's award of a public contract to Amercare Plaintiffs. These facts constitute sufficient evidence for a jury to find that Amercare Plaintiffs were on notice to require further inquiry, and to initiate the running of the statutory period. Whether this issue ultimately would be decided by the jury or the court, in light of the foregoing evidence, Amercare Plaintiffs have failed to demonstrate by clear and convincing evidence a probability of prevailing on the statute of limitations issue with regard to these types of statements by Loops Defendants.

### 3. **Qualified Privilege**

Third, Loops Defendants' statements to the IAC concerning Amercare Plaintiffs' alleged counterfeiting are subject to the conditional or qualified privilege which applies to statements made between persons sharing a common interest on matters of public concern. *See Castello,* 2010 WL 4857022, at *10 (citing *Corbally v. Kennewick Sch. Dist.,* 973 P.2d 1074, 1078 (Wash. Ct. App. 1999)); *see also Fahey v. Shafer,* 167 P. 1118, 1121 (Wash. 1917). In *Fahey,* the defendants made allegedly defamatory

statements accusing the plaintiff of false advertising to the Seattle Ad Club. *Id.* at 1120.

The Seattle Ad Club was a professional organization "of advertising and newspaper men" with a "purpose of looking after questionable advertising." *Id.* The court found that the "mutuality of interest" between the defendants, who were Seattle merchants, and the Seattle Ad Club, was "apparent." *Id.* at 1121. The defendants had made accusations of false advertising against the plaintiff and asked the Seattle Ad Club to investigate. *Id.* The Washington Supreme Court found that "[t]he trial court committed no error in holding that . . . the relation of the parties to the subject-matter was such as to invoke the rule of qualified privilege." *Id.* The court finds the facts of *Fahey* similar to those involving Loops Defendants' statements to the IAC concerning alleged counterfeiting. Similar to the Seattle Ad Club, the IAC is a public interest or trade group, except instead of focusing on false advertising, the IAC addresses counterfeiting and piracy issues. Accordingly, the court finds that this qualified privilege applies with regard to Loops Defendants statements to the IAC. *See id.*

In their response, Amercare Plaintiffs offer no opposition to the applicability of this qualified privilege. (*See generally* Resp. to Special Mot.) Instead, Amercare Plaintiffs assert that the qualified privilege is lost because Loops Defendants acted with malice. (*Id.* at 18.) Although an absolute privilege or immunity will absolve a defendant of all liability for defamatory statements, a qualified privilege may be lost and liability for defamatory statements imposed if it can be shown that the qualified privilege has been abused. *Bender v. City of Seattle,* 664 P.2d 492, 504 (Wash. 1983). In order to demonstrate that a qualified privilege has been abused, the plaintiff must prove by clear

and convincing evidence that the defendant acted with malice or knowledge or reckless

disregard as to the truth or falsity of a statement. *Id.* at 504-05. Here, Amercare

Plaintiffs have acknowledged that they must prove the element of fault by demonstrating

that Loops Defendants acted with malice. (*See* SJ Mot. at 18; Resp. to Special Mot. at

18.) Accordingly, the court will address the issue of whether Amercare Plaintiffs have

demonstrated by clear and convincing evidence a probability of success with regard to

defeating the qualified privilege defense in conjunction with its discussion of Amercare's

evidence of fault below.

### 4. Fault

A defamation claim consists of four elements: (1) a false statement, (2) lack of

privilege to make the statement, (3) fault, and (4) damages. *Duc Tan v. Le,* No. 39447-2-

II, ___ P.3d ___, 2011 WL 1491697, at *5 (Wash. Ct. App. Apr. 19, 2011). The case law

indicates that Amercare Plaintiffs must prove the element of fault in this matter not

simply by demonstrating that Loops Defendants acted with negligence, but rather by

demonstrating that Loops Defendants acted with actual malice or knew that their

statements were false or recklessly disregarded the probable falsity of their statements.

*See id.* at *9 (setting forth standard for "actual malice"). If the plaintiff is a public

official, proof of fault requires evidence of actual malice by clear and convincing

evidence. *Castello,* 2010 WL 4857022, at *10-11 (citing *Corbally,* 973 P.2d at 741).

Here, Loops Defendants' allegedly defamatory statements all pertained to the manner in

which Amercare Plaintiffs either won a public contract from the DOC or subsequently

performed under that public contract. Amercare Plaintiffs' "conduct was that of a public

official because it involved the manner in which [they] performed [their] duties pursuant to a public contract." *Corbally,* 973 P.2d at 741; *see also Valdez-Zontek v. Eastmont Sch. Dist.,* 225 P.3d 339, 347 (Wash. Ct. App. 2010) (Plaintiff "is a public official *to the extent her conduct involved the manner in which she performed her job duties* pursuant to a public contract.") (italics in original).  Accordingly, Amercare Plaintiffs must establish fault by proving actual malice on the part of Loops Defendants.

### a.   Statements Concerning Alteration of Flexbrush Toothbrushes

Amercare Plaintiffs assert that Mr. Kayser admitted in a declaration submitted in the Patent Litigation that his earlier statements concerning his claim that Amercare Plaintiffs had physically altered Loops Flexbrushes and removed the trademark from samples that Amercare submitted in connection with its bid application to New York City were false.  (*See* SJ Mot. at 4, 18.)  Amercare Plaintiffs assert that Mr. Kayser's refusal to retract his statements despite his admission that that his earlier allegations were incorrect demonstrates malice.  (*Id.*)  Amercare Plaintiffs cite only foreign authority and no Washington authority in support of their position.  (*See* SJ Mot. at 18-19 (citing *Zerangue v. TSP Newpapers Inc.,* 814 F.2d 1066, 1071 (5th Cir. 1987) (refusal to retract an exposed error tends to support a finding of actual malice, whereas, a readiness to retract tends to negate actual malice); *Augusta Chronicle Pub. Co. v. Arrington,* 157 S.E. 394 (Ga. Ct. App. 1931).)

In response, Loops Defendants assert that although Mr. Kayser was incorrect in his assertions that Amercare Defendants removed the trademark from Flexbrush toothbrushes, he was not incorrect with regard to the broader allegation that Amercare

1    Plaintiffs in fact created a knock-off of his product.  (SJ Resp. at 10.)  Loops Defendants

2    assert (and cite evidence supporting their assertion) that Mr. Kayser's mistake was due to

3    an investigative error, and accordingly does not demonstrate actual malice.  (*Id.*;

4    Klingbeil Decl. Ex. F ¶¶ 84-89.)  Under Washington law, investigative mistakes do not

5    rise to the level of actual malice.  *Herron v. KING Broadcasting Co.,* 746 P.2d 295, 302

6    (Wash. 1987).

7         Further, Loops Defendants assert that the context of this dispute is relevant and

8    strengthens their position concerning the inadequacy of investigative errors to establish

9    malice.  Loops Defendants point to the fact that Amercare Plaintiffs have been found by

10   another court in this district to have suppressed material evidence, lied under oath, and

11   filed false declarations concerning Mr. Kayser's claims of patent and trademark

12   infringement.  *Loops LLC,* 2011 WL 915785, at *9-10.  Loops Defendants contend that

13   these circumstances underscore the conclusion that they should not be held liable if Mr.

14   Kayser's investigation, which was improperly thwarted by Amercare Plaintiffs, produced

15   factual mistakes.  The court agrees.  On this record, particularly in light of Amercare

16   Plaintiffs' conduct in the related Patent Litigation, the court cannot conclude that Mr.

17   Kayser's investigative mistakes amount to malice.

18        In any event, Loops Defendants assert that Mr. Kayser's admission in his July 10,

19   2008 Patent Litigation declaration that he erred with regard to his statements that

20   Amercare Plaintiffs had removed the trademark from Flexbrush toothbrushes constitutes

21   a retraction of his earlier statement.  (SJ Resp. at 8; *see* Klingbeil Decl. Ex. F ¶¶ 119-20.)

22   Thus, Loops Defendants assert that even if the court were to apply the foreign authority

1  put forward by Amercare Plaintiffs, the evidence here would demonstrate that Mr. Kayser

2  had retracted his earlier mistaken statements concerning the methodology Amercare

3  Plaintiffs utilized to knock off his product.[2]

4      Finally, Loops Defendants also assert that Mr. Kayser's statements have been

5  demonstrated to have a factual basis in light of the court's ruling in the Patent Litigation

6  finding Amercare liable on all of Mr. Kayser's claims, including trademark infringement.

7  (Reply to Special Mot. at 4 (citing *Loops LLC*, 2011 WL 915785).)  In light of the

8  foregoing, the court cannot conclude that Amercare Defendants have demonstrated by

9  clear and convincing evidence a probability of prevailing on this issue of fault with

10  regard to statements made by Loops Defendants concerning the alteration of Loops

11  toothbrushes by Amercare Plaintiffs.

12      **b.  Statements Concerning Excessive Levels of Lead or Heavy Metals**

13      In 2007, Mr. Kayser tested Amercare's flexible toothbrush for the presence of

14  heavy metals and lead.  (Sec. Klingbeil Decl. (Dkt. # 46) Ex. H.)  The test results

15  indicated the presence of lead and other heavy metals, but at levels that complied with

16  _____

17      [2] In their reply memorandum, Amercare Plaintiffs assert for the first time that Mr. Kayser
republished his earlier statements claiming fraudulent product alteration after his retraction of

18  those remarks in his July 10, 2008 Patent Litigation declaration.  (SJ Reply (Dkt. # 59) at 2, 8-
10.)  In support of this assertion, Amercare Plaintiffs cite to three letters sent by Mr. Kayser

19  dated April 21, 2008, May 19, 2008, and September 8, 2008.  (*See* Second Klingbeil Decl. (Dkt.
# 61) Exs. K, L & M.)  The court notes that the first two of these letters are in fact dated prior to

20  Mr. Kayser's retraction in his July 10, 2008 Patent Litigation declaration, and therefore could not
constitute a republication after that date.  The court also notes that the letters dated April 21,

21  2008 and September 8, 2008 were directed to government officials, and therefore would be
covered by the absolute immunity provided under RCW 4.24.510.  Further, "[t]he district court

22  need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes,* 491
F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas,* 328 F.3d 1039, 1049 (9th Cir. 2003)).

federal requirements for those substances. (*See id.*) Despite these results, Mr. Kayser sent letters in early 2008 stating that Amercare's toothbrushes were "laden with heavy metals," that they "contain[ed] excessive amounts of lead," and that providing Amercare toothbrushes to inmates amounted to "feeding lead and heavy metals" to them. (*Id.* Ex. E at 21-23.) Amercare Plaintiffs assert that these statements amount to actual malice because Mr. Kayser knew that Amercare's toothbrushes complied with federal standards for lead and other heavy metals.

Loops Defendants respond that Mr. Kayser had a factual basis for his statements because the test results he relied upon at the time did indicate that Amercare toothbrushes contained lead and heavy metals.[3] They further assert that Mr. Kayser never stated that the toothbrushes did not meet federal standards. In fact, the test indicates that certain parts of Amercare's toothbrush contained approximately 30% of the allowable limit for extractable lead and extractable arsenic. (*See id.* Ex. H.) According to Loops Defendants, whether the levels of lead and heavy metals contained within Amercare's toothbrushes are "excessive" is a matter of opinion, not provable fact. A statement that communicates only ideas or opinions cannot support a defamation claim, because there is no such thing as a false idea or opinion. *Schmalenberg v. Tacoma News, Inc.,* 943 P.2d 350, 357 (Wash. Ct. App. 1997). Use of the word "excessive" connotes an opinion that is

_____

[3] Amercare Plaintiffs also point to expert opinions, dated March 2011, which criticize the methodology used in the tests that Mr. Kayser performed on Amercare toothbrushes in 2007. (Dkt. ## 44 & 45.) Even if the court assumes that Amercare Plaintiffs' experts are correct, this does not demonstrate that Mr. Kayser had any reason to doubt the methodology or accuracy of the tests conducted in 2007, or that he acted with malice at that time.

not provably false. *Johnson v. Grays Harbor Cmty. Hosp.,* No. C06-5502BHS, 2008 WL 819724, at *19 (W.D. Wash. Mar. 25, 2008).

Washington courts also examine a statement in the totality of the circumstances in which it is made to determine whether the statement should be considered as nonactionable opinion. *Dunlap v. Wayne,* 716 P.2d 842, 848 (Wash. 1986). Washington courts consider at least (1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts. *Id.* With regard to factors one and two, Loops Defendants point out, Mr. Kayser's statements concerning "excessive" levels of lead or heavy metals in Amercare's toothbrushes occurred in the context of a highly adversarial dispute over a competitive bid public contract, in which legal counsel had become involved. Loops Defendants also assert that the New York City officials and the New York media outlets to which Loops Defendants distributed their statements were aware of the adversarial context and had reason to evaluate those statements for subjective bias. (Reply to Special Mot. at 5.) In similar adversarial contexts, Washington courts have found that statements of opinion and exaggeration should be expected. *See, e.g., Dunlap,* 716 P.2d at 540-41 (negotiations between attorneys concerning dispute). With regard to the third factor, Mr. Kayser's statements concerning excessive lead and heavy metals in Amercare's toothbrushes could be construed to imply the undisclosed fact that those levels were in excess of federal standards. Nevertheless, Loops Defendants point out that Mr. Kayser's counsel offered to share the test results he had obtained with New York City officials. (Klingbeil Decl. Ex. H at 8-10.) Although it is a closer call, based on its evaluation of all

of the circumstances and factors at issue, the court cannot conclude that Amercare

Plaintiffs have demonstrated by clear and convincing evidence a probability of prevailing

on the issue of fault with regard to Amercare Plaintiffs' defamation claims arising out of

Loops Defendants' statements concerning the amounts of lead and heavy metals in

Amercare Plaintiffs' product.

### c.  Statements Alleging Patent Infringement

The patent which pertains to Loops Defendants' Flexbrush did not issue until

February 26, 2008. *Loops LLC,* 2011 WL 915785, at *3.  Amercare Plaintiffs provided

the DOC with Amercare toothbrushes from October 21, 2007 until May 22, 2008. *Id.*

Amercare Plaintiffs assert that Mr. Kayser defamed them when he made statements prior

to February 26, 2008, the date that the patent issued, to the effect that Amercare was

infringing upon his patent for the Loops Flexbrush.  (SJ Mot. at 16; Resp. to Special Mot.

at 20.)  Amercare, however, continued to sell and the DOC continued to purchase

Amercare toothbrushes subsequent to the patent's issuance.  In addition, although its

ruling was not on merits, but rather imposed as a consequence for discovery abuses, as

noted above, the court in the Patent Litigation found Amercare Plaintiffs liable for

infringement of the patent pertaining to the Loops Flexbrush. *See Loops LLC,* 2011 WL

915785, at *10.  In Washington, a defendant need only establish that a statement is

substantially true, or that the gist of the story, the portion that "carries the sting," is true.

*See, e.g., Mohr v. Grant,* 108 P.3d 768, 775 (Wash. 2005).  Here, the portion of the

allegedly defamatory statements that carried the sting was Mr. Kayser's assertion that

Amercare Plaintiffs had infringed upon a patent, not the inaccurate portion concerning

the dates upon which that infringement occurred.  In light of the fact that Loops

Defendants have demonstrated post-patent sales, as well as the prior findings by the court

in the Patent Litigation, this court concludes that Amercare Plaintiffs have not established

by clear and convincing evidence a probability of prevailing on this issue of fault with

regard to their defamation claims arising out of Loops Defendants' statements alleging

patent infringement.

### d.  Statements Alleging Counterfeiting

Amercare Plaintiffs assert that Mr. Kayser acted with malice or knowledge of the

falsity of his statements, or reckless disregard for the truth when he repeatedly stated in

2007 and 2008 that Amercare was engaged in counterfeiting the Loops Flexbrush.  (SJ

Mot. at 20; Resp. to Special Mot. at 20-21.)  The only evidence of malice that Amercare

Plaintiffs put forward, however, are statements by Mr. Kayser in his February 7, 2011,

deposition.  (Resp. to Special Mot. at  20-21.)  In this deposition, Mr. Kayser defines

"counterfeiting" as making an identical copy of another's product and then "[p]ass[ing] it

off" as the other's product – in other words, providing a false designation of origin.

(Klingbeil Decl. Ex. J (Kayser Dep.) at 83-87.)  He testified that, although the Amercare

toothbrush is a "knock off" of the Flexbrush, he has no evidence that Amercare ever sold

its product under the name of the Loops Flexbrush.  (*Id.*)

Mr. Kayser's testimony in 2011 does not establish that he acted with malice,

knowingly made false statements, or made statements in reckless disregard of their falsity

in 2007 and 2008.  Even if Mr. Kayser's subsequent investigation into this issue revealed

that his statements in 2007 and 2008 were incorrect at least in part, and one could

therefore infer from this that his earlier investigation had been inadequate, this would still be insufficient to establish malice on Mr. Kayser's part by clear and convincing evidence. Investigatory mistakes or a failure to investigate alone are insufficient for a court to find malice. *Herron,* 776 P.2d at 106. Yet, Amercare Plaintiffs offer nothing else. (*See* SJ Mot. at 20; Resp. to Special Mot. at 20-21.) Simply put, the fact that Mr. Kayser implicitly acknowledged in his 2011 deposition that his statements in 2007 and 2008 were incorrect (at least in part), is insufficient to prove by clear and convincing evidence that he acted with malice when he made the statements in 2007 and 2008. Further, as noted above, the context of Mr. Kayser's statements is also relevant here. The court is mindful of the fact that another federal district court has found that Amercare Plaintiffs have suppressed relevant evidence and provided false testimony concerning Loops Defendants' patent and trademark claims in the related Patent Litigation. *Loops, LLC,* 2011 WL 915785, at *9-10. In this context, the court would be reluctant to find liability on the part of Loops Defendants for any investigative errors on Mr. Kayser's part. Accordingly, the court cannot conclude that Amercare Plaintiffs have established by clear and convincing evidence a probability of prevailing on this issue.

The court's conclusions that Amercare Plaintiffs have demonstrated insufficient evidence concerning malice not only result in a failure of proof with regard to element of fault, but also result in a failure of proof with regard to Loops Defendants' qualified privilege discussed above.

### 5. Defamation Per Se and Damages

Amercare Plaintiffs do not attempt to demonstrate actual damages in this matter. Rather, they rely upon the doctrine of defamation per se. (SJ Mot. at 20-24; Resp. to Special Mot. at 21-24.) Generally, a plaintiff may only recover the actual damages caused by defamation. *Valdez-Zontek,* 225 P.3d at 349. Damages may be presumed in some circumstances, however, if a communication constitutes defamation per se. *See Dodson v. Morgan Stanley DW, Inc.,* No. C06-5669RJB, 2007 WL 3348437, at *16 (E.D. Wash. Nov. 8, 2007). Where the plaintiff is a public figure or the matter involves an issue of public concern, presumed damages are impermissible unless a plaintiff has shown actual malice. *See id.*; *see also Maison de France, Ltd. v. Mais Oui!, Inc.,* 108 P.3d 787, 798 (Wash. Ct. App. 2005). Here, we have both a public plaintiff and an issue of public concern. Therefore, Amercare Plaintiffs may not be awarded presumed damages unless they also establish actual malice on the part of Loops Defendants. As noted above, Amercare Plaintiffs have not established by clear and convincing evidence a probability of prevailing with regard to the issue of actual malice. Accordingly, they also fail to establish defamation per se or presumed damages. The court finds that Amercare Plaintiffs have not provided clear and convincing evidence of a probability of proving the element of damages.[4]

---

[4] Amercare Plaintiffs submitted a declaration from Ms. Hemming (Dkt. # 60) with their reply memorandum in support of their motion for summary judgment (Dkt. # 59). In this declaration, Ms. Hemming asserts for the first time that she suffered "a great deal of worry and upset" as a result of Loops Defendants' allegedly defamatory statements. (Hemming Decl. (Dkt. # 60) ¶ 3.) On the basis of this declaration, Amercare Plaintiffs assert for the first time in their

As described above, Amercare Plaintiffs' claims for defamation and defamation

per se suffer from infirmities involving absolute immunity under RCW 4.24.510,

expiration of the statute of limitations, qualified immunity, a failure of proof concerning

the element of actual malice, and a failure of proof concerning damages.  As a result, the

court cannot conclude that Amercare Plaintiffs have met their burden under RCW

4.24.535(4)(b) of establishing by clear and convincing evidence a probability of

prevailing on their defamation claims.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Loops Defendants' Special Motion

to Strike Amercare Defendants' defamation claims (Dkt. # 32), and DENIES Amercare

Plaintiffs' motion for partial summary judgment (Dkt. # 29), as well as Loops

Defendants' cross motion for partial summary judgment (Dkt. # 48) as MOOT.

In addition, pursuant to RCW 4.24.525(6)(a), the court ORDERS Amercare

Plaintiffs to pay the mandatory statutory penalty of ten thousand dollars to each

defendant.  Pursuant to the same statutory provision, the court also ORDERS Amercare

reply memorandum that this declaration is sufficient to establish actual damages even in the
absence of economic damages.  (SJ Reply (Dkt. # 59) at 14-15.)  Prior to the submission of their
reply memorandum and Ms. Hemmings's declaration, Amercare Plaintiffs relied solely upon the
doctrine of defamation per se and presumed damages to meet this damages element of their
claim.  Amercare Plaintiffs have provided no explanation as to why they did not present this
evidence and discuss issue in conjunction either with their opening memorandum in support of
summary judgment (Dkt # 29) or in their memorandum in response to Loops Defendants' special
motion to strike (Dkt. # 42).  As noted above, "[t]he district court need not consider arguments
raised for the first time in a reply brief." *Zamani,* 491 F.3d at 997 (citing *Koerner,* 328 F.3d at
1049).  Because Amercare Plaintiffs provide no explanation or demonstration of good cause
concerning why this issue and evidence were not raised prior to their summary judgment reply,
the court declines to consider this issue.

1 Plaintiffs to pay Loops Defendants' costs of litigation, along with the reasonable

2 attorneys' fees incurred by Loops Defendants in connection with the special motion to

3 strike the defamation claims (Dkt. # 32).

4      Loops Defendants' counsel shall submit their request for costs and reasonable

5 attorneys' fees within 7 days of the date of this order. Amercare Plaintiffs shall submit

6 any response to the request within 7 days of the filing of the request.

7      Dated this 25th day of July, 2011.

 

 

_____

JAMES L. ROBART
United States District Judge